We have four cases this morning for argument. We've had two cases that have been submitted on the brief. We'll start with the first case, Personalized Media v. Rovi Guides. Ms. Scullander, I see you've reserved five minutes for rebuttal. Is that correct? Yes, Your Honor. Okay, you may proceed. May it please the Court, this appeal concerns the ambiguous scope of an exclusive license agreement covering the Interactive Program Guide field. The parties and courts to consider the license have proposed now four possible readings of the critical provisions, but the District Court nevertheless found the agreement unambiguous and read it in a manner that no party reads it on appeal. Rovi asks that this Court simply find the license ambiguous and remand for further proceedings. Now, the first sentence of paragraph 1.3 states that the field covers applications and services, or IPG applications, the primary purpose of which is to provide descriptive information relating to television or radio programming and which may control consumer equipment that enables viewing, listening, recording, or storing of such programming. But the second sentence states that such IPG applications shall include, without limitation, tuning, flip, browse, parental control, recording, video on demand, and pay-per-view, among other listed items. So, the central ambiguity concerns whether the items listed in the second sentence must meet the primary purpose test, that is, provide descriptive information recited in the first sentence to be covered. Now, at least four possible readings have been proposed. The first is that the listed items are covered without any need to be tested against the provisions of the first sentence. So, they're just entirely separate grants. And the District Court in Georgia in prior litigation found this to be one reasonable reading, but not the only reasonable reading. So, if you have different readings of a particular clause in a contract, your argument is if you have more than one reading, then you have an ambiguity. Do those separate readings have to be reasonable to a certain degree? The rule is that the contract must be reasonably susceptible to multiple readings. So, I think the answer to your question is found in the Phillips case in Delaware. And if you see there, what the court said was, basically, we've got multiple ways to read this thing, but neither of them really seem right. And both of them sound like constructions that the parties would not have intended. So, I think Phillips is the most on point here in terms of the two constructions that the Georgia District Court found. So, the first was that they're just two completely separate grants. And that is saying that the shall include means shall include. So, when it says shall include tuning, it shall include tuning. I'm asking because it seems to me that every litigation involving a contract must by definition have, you know, there's two separate readings that are being alleged. That's right. So, do those readings have to be reasonable to the court, both of them? And therein lies the ambiguity? If you have one reasonable reading just based on the language alone, then I think that would be the right reading. If you have one reasonable reading versus one unreasonable reading, say. But if you've got no reasonable readings based on the language alone, then that's when Phillips says that's an ambiguity. So, the question here, I mean, and I think maybe the question you're asking me is, is the district court's reading the only reasonable reading? And we know that's not true because PMC does not even read it that way on appeal. And what the district court held, this was the second reading, and I will quote, the only items covered are those with the primary purpose of providing descriptive information. And that the list set forth in the second sentence is a subset of examples of the, quote, which are covered if the primary purpose of the application is to provide descriptive information. So, what the district court said is, I see this second sentence list, recording, tuning, pay-per-view. What the court said unambiguously, the only way to read that reasonably is that those are examples. Each of those is an example of an IPG application referred to in the first sentence, which is covered only if it meets the primary purpose test. But here's what PMC says in the red brief. Many of the features listed in the second sentence would not satisfy the primary purpose requirement of the first sentence if viewed as individual or examples of IPG applications, which they are not. So, at the bottom line, what you have is both parties agree that the way the district court, now PMC is defending the judgment, but if you read the brief carefully, they do not defend the ruling. They do not defend the reading of the contract. And the problem with that reading, with the court's reading, and it's at least five times in the district court's opinion where he makes clear. So, under the district court's reading, or I guess your understanding of the district court's reading, which items in sentence two would we X out? Tuning? Tuning. Flip. Recording? Flip. There's some, you know, some of the others there's some question about, but certainly tuning, recording, and flip. I think there were suggestions of, you know, video on demand or pay-per-view, although the ECHOSTAR defendant said those actually did have a primary purpose. I think parental control, the primary purpose of parental control is parental control. Reminders. I mean, there are other things more gray. Help. I'm not sure of help. The primary purpose of help is to provide. There were a package of licenses here, right? That's right. There was this IPG license, and then there's the VOD and PBR license. That's right. Should, would you regard those other two licenses, the non-exclusive licenses, as extrinsic evidence, or is that part of the, or should they be read as if it was all integrated together with the IPG? I believe the law is that you can read things executed as part of the same, on the same day, as intrinsic evidence rather than extrinsic evidence. Okay. So, why did Roe v. enter into those non-exclusive license agreements for VOD and PBR functionality if the IPG license covers everything that you say it covers? Two answers. One is that the testimony in the district court in Georgia was that they were taking a belt-and-suspenders approach. The second point is that under Roe v.'s reading, which was effectively put together after we heard this extrinsic evidence in Georgia, that those, they're not useless. I mean, Roe v.'s reading is that the second sentence describes features that are covered when they are driven by an application. So, in other words, you still have to have the, you have to have a connection. It has to be a nexus to a program guide under Roe v.'s reading. But the point is, the question is whether the guide is directing these things, which is how TV Guide Interactive worked. So, the non-exclusive licenses cover just the field period. There's no need for a nexus to a program guide at all for those non-exclusive licenses. Those are clearly broader than the exclusive licenses. But just to understand Roe v.'s business, it's all about interactive guides, right? That's right. Okay. So, that's why I'm trying to understand why would Roe v. want to pay for anything outside of the interactive guide field? Well, Roe v. is a big company with a lot of different, I mean, that was, the TV Guide Interactive was a main function, but there are multiple companies under this umbrella. It's not just guides. Yes. There's a lot of confidential markings in these briefings. You know, if we were to write an opinion here, I'm just trying to figure out, is everything really confidential? There are some of the quotes from some of the witnesses. Some of those quotes were filed in depositions in the Georgia litigation. So, that's why I think they were filed under seal in that litigation. I'm not sure those quotes really are, you know, it was, there's probably not confidential business information in some of those quotes. Most of the stuff that is excerpted is confidential business information relating to prior, the drafts of the license and then the numbers. But I think if you'll find the, you'll find that in the reply, there is nothing confidential at all. The other answer is, really, to find it ambiguous, you don't need to quote from the extrinsic evidence that was in there. You really just need to… To find it ambiguous, do we need to resort to any extrinsic evidence? I don't think… Okay. Because you're brief and the arguments of the party seem to me to continuously be putting the cart before the horse. There's either an ambiguity or not. If we find an ambiguity, then we look at the intent of the parties through use of extrinsic evidence, correct? That's right. So, you're almost out of time here. So, tell me, what is it that's unreasonable about the district court's interpretation? Under the district court's… Without resorting to extrinsic evidence or… Yes. The district court's interpretation renders the second sentence mere surplusage. It adds nothing and its removal changes nothing. In other words, the second sentence says, shall include recording, but under the district court's interpretation, the only thing that matters is whether recording has a primary purpose of providing descriptive information. And not only that, it actually flips the second sentence on its head. As we were discussing certain items, tuning and recording, everyone agrees and a reasonable third party would agree that no one, that those functions never have a primary purpose. Okay. You need to… Yeah, I just had a quick question because you didn't really ever get to what your opposing counsel says in the red brief. Let's assume for the moment that the district court and the red brief conception of what the district court said are the same. So, what's wrong with their reading as expressed in the red brief about the idea of, well, this license covers the display of information about all the different interesting operations and features enumerated in sentence two? I think, well, PMC's brief, the position as I understand it now is that the second sentence list does not need to meet the primary purpose test, but they're only covered when they are used as part of a guide. The problem with that is that comes from Holtzman's testimony in the Georgia litigation as well. So, basically, their reading and our reading are both really reflecting the extrinsic evidence that's in there. So, I don't think either party proposes a reasonable reading that's based on the plain language of the contract. Well, I think it would go like this. The guide is providing you visual descriptive information about different features. Those features happen to be listed in sentence two. So, now you have this interactive guide that you as the consumer can interact with and can see choices about tuning, flips, recording, storing information. What's wrong with that reading? Well, I don't think it's consistent with IPG applications shall include tuning, recording, video on demand. No one would think that shall include recording means that I can only, I'm not sure what you're saying, like I can see descriptive information about recording, but I can't record. But don't you want to get to what you call sentence 1B? I mean, I thought, I'm trying to help you now. Yes. The whole point about controlling the equipment so that you can enable viewing, storing, etc. Absolutely. That's Roby's position is that the driven by goes to that. Okay. Yes. Okay. I'll restore you back to your five minutes rebuttal. Thank you. Mr. C? Yes, sir. Good morning. May it please the court. The district court got it right to be within the interactive program guide field and application or service must satisfy the primary purpose test. That is, it must be a program guide. And the second sentence doesn't expand the scope, is not a separate grant of scope. We have not changed our position. We agree with the district court's opinion. There has been no inconsistency in PMC's position here. Maybe there's no inconsistency with your position, what you've presented below and what you present to us. But I don't quite see what your position is matches up with exactly what the district court said. I mean, when I read the district court opinion, it really looks like to me that he is telling all of us that sentence 2 is relevant. All those features listed are relevant in part and covered by the license only if those features satisfy the primary purpose test of sentence 1. Yes, Your Honor. That is right, and that is the flip side of the conclusion, which is that that sentence lists features. The district court recognized that. And when they are part of a program guide, they're covered because the scope of the license is program guides. Now, if one were to talk about an application that is in that list as a district court held, if you're just looking at an application that is solely one of those items there, of course it must satisfy the primary purpose test. What does that mean to you? I guess the function of tuning doesn't have anything to do with providing descriptive information. That's right. And so, as I understand the district court's opinion, district court essentially put a big X through the word tuning in sentence 2 because tuning does not have anything to do with providing descriptive information. An interactive program guide can provide and will provide all those features that are listed in that second sentence. So, it is not putting an X through it. It is saying that the second sentence is explaining all these features that can be part of a program guide that do not contribute to that primary purpose. But when they're part of a program guide, they're still covered. I'm right now focusing and zeroing in on the language district court opinion has. Sure. And it talks about how those features in sentence 2 are covered only if those features satisfy sentence 1. And so, that makes me worried that the district court is saying that there are several features listed in sentence 2 that are superfluous. They're not superfluous, Your Honor. Well, walk me through the district court's language. You saw your opposing counsel quote one of them. There's twice in two different parts of the opinion where the district court is providing its conception of what the license covers and keeps using this conditional if. That's right. If these individual features, operations, satisfy the primary purpose test of sentence 1, then the feature in sentence 2 is covered by the license. Am I reading the district court's opinion incorrectly? I think so, Your Honor. The district court on A5 said, the only items covered in the interactive program guide field are applications and services, the primary purpose of which is to provide descriptive information. That is, program guides. I'm talking about A6 and A9. Yes, Your Honor. Now, but to be clear, the district court refers to the things in the second sentence as features on A5 multiple times. Now, if you are talking about these features independent of a program guide, so outside of a program guide you're saying this feature is an application covered by the guide by itself, then of course the primary purpose test must apply. This language here in the second sentence is not providing extra scope. That is what the district court said. It is providing a list of features that are covered when they're part of a program guide. But that's not the language that the district court used. I'll just go to A6 again. Quote in the middle of the page, the list set forth in the second sentence is a subset of examples of the IPG applications generally referred to in the first sentence, which are covered if the primary purpose of the application is to provide descriptive information. You're very familiar with that sentence. That's the sentence I'm focused in on like a laser beam. Let's talk about that sentence. What does it mean to you when it says, if the primary purpose of the application listed in the second sentence is to provide descriptive information? So many of these things, like tuning, doesn't do that. So what is the district court getting at? Tuning is not part of... The word tuning is, although it's in the license, it's really out of the license. It's not out of the license. It's covered when the primary purpose test is satisfied. If tuning is provided as part of something satisfying that test, that is, as part of a program guide, it is covered. Is tuning independently covered? Probably not, because it probably doesn't satisfy the primary purpose test. I think we're getting held up on a misconception that Roe v. has been pressing. Now this language, in a second sentence, is not listing things that are separately covered in the field. It's listing features of programs. It says such applications shall include. Yes, Your Honor. So let's take a slightly different example here. If we had a field whose definition was the cars field, means motor vehicles, the primary purpose of which is to provide ground transport for people. Such motor vehicles shall include roof racks, bike racks, air conditioning, cup holders. Let's have a long list of things. The idea here, with this language, it has the same purpose. The idea of such language is that, yes, there's all this stuff that doesn't contribute to that primary purpose. But if it's part of a motor vehicle, it would be covered within the cars field, if it satisfies that primary purpose test. The same thing applies here. Now I do want to note for the court that the district court had two independent grounds for its interpretation. The first, of course, is that there was only one natural interpretation. None of the other interpretations that Roe v. offered were held water, and so there was no ambiguity. But there was an independent ground there, too, which is that if the contract is ambiguous, we can look to the extrinsic evidence, and that's dispositive, too. The district court held that that extrinsic evidence... Can the district court do that on summary judgment? Yes. It was presented with a full record. We have to remember there was a trial in the Georgia case, a fully developed record, about what the party's intent was. And that trial, to put it mildly, was disastrous for Roe v. The negotiators of both sides expressed the interpretation of that second sentence, and they were in complete agreement. Are you talking about the portions that were quoted in the district court's opinion? Yes, Your Honor. But the parties entered the full record that they considered relevant from that case. All the extrinsic evidence was there. And the district court pointed to the testimony of each side's negotiator. And here's the testimony of Roe v. his negotiator. The second sentence was intended to convey that there could be a very long list of features and functions that a guide could provide, and that guide would still be within the field of use as defined here. So as long as you had an application that passed the primary purpose test, and I'm going to skip to the end here, there could be a considerable number of features and functions that the guide would provide. And this is simply an illustrative list. So why doesn't that comport with Roe v. his interpretation in the sense that there's an interactive program guide, and you can, through that interactive program guide, use a lot of different interesting features and functions? That's their interpretation, and that's the interpretation that was rejected by the district court. No, that is not their interpretation and not the one that the district court rejected. Their interpretation is that everything in the second sentence is covered as part of the field scope. Now, I think they are backtracking away from the position they took in an absolute sense in the district court. They're backtracking and saying it has to be connected to the use of a guide. Now, that is not only negated by the language of the contract, it's not supported. There's nothing in the field language that suggests things connected with a guide are covered by it. What the language covers is a guide. What about sentence 1B, what the other side refers to as 1B, when it talks about, okay, we're talking about applications and features, the primary purpose of which is to provide descriptive information. Fine, that's 1A. But then 1B goes on and says, and where the consumer can control equipment that enables viewing and storing and recording. I mean, now that's starting to sound a lot like not just being able to see interactive screens informing you about different features, but it's actually about controlling the equipment that enables those features. That's right. That's entirely covered. The guide is covered. It covers not only... But we're talking about slightly two different things because there's arguably a reading, and this is Roby's reading, is that it's not just looking at those little display screens on the TV and clicking through interesting display screens. It's actually also triggering the functionality of the different choices that are available on those screens, whether it's recording something, whether it's tuning the TV to a different channel. That is something I think you're disputing, right? Let's look at the language. I just need an answer. Are you disputing that? We are not disputing it, and that's not actually their position. That's the thing. The field language covers, allows for the control of equipment, of consumer equipment that does the viewing and recording and so on. That is covered, but the equipment itself... Let's step back for a second because now I'm getting confused what the crux of the argument is. To me, what I just described is TV Guide Interactive. Yes. Okay, so you're saying that's covered by the license? Yes. Okay, so therefore someone can use an interactive program guide under this license to not only access a whole bunch of different functions and operations listed in sentence two, but actually use those operations and functions. If I understand right, you can control external stuff. You can access external applications, but the contract is clear. The external functionality itself is not covered. The ability to access is. That is in the third sentence. Very clear withdrawing of any scope. What is the difference between those two things? Oh, well, so the program guide itself may have code that calls upon external functionality, that calls upon stuff that's in other programs, other hardware, that sort of thing. It can call upon that stuff, but that other stuff outside is not covered. Why wouldn't it be covered? The language reads the primary purpose of, you know, to provide descriptive information. It seems to me that whether you look at the list of items as either functions or applications, that they all provide descriptive information, but some do more than that. So, why wouldn't they be covered if the limitation in the contract is for the primary purpose? It doesn't say the only purpose. Right. Yeah. No, the idea is a program guide's primary purpose is, of course, to provide descriptive information. It can have a lot of other functionality. What about parental control or TV mail, TV chat? Right. All of that can be part of a guide and would be covered because it's still the primary purpose, even though there's all this other functionality, the primary purpose. But you're saying it's limited only right there to the descriptive information. Not at all. That's never been the position. The position is that the program guide is covered. No matter how full-featured it is, it is covered. However, functionality outside of the guide is not covered. That's the point I'm getting. Why not? I mean, if the contract says primary purpose, it doesn't say the only purpose. Right. Then it says here's a list of what's covered. One thing is that it's got to be the primary purpose is to provide descriptive information. That's not the only purpose. The list is not listing what is covered. It is not listing examples of things that are in the scope. What is in the scope is program guides. If the second sentence were intended to be a list of things that satisfy it, wouldn't you expect to find interactive program guides? And then that's not a list that follows it? It's not a list of program guides. It's not a list of examples of what is covered. It's a list of applications. Program guide applications. No. It is a list of features. So that's your argument now. That's always been the argument. That's why you really don't agree with the district court, do you? No, we do agree with the district court. The district court called these things... The district court interpreted this to be applications and not features. The point of the district court's opinion is that the second sentence doesn't provide extra scope. Everything has to satisfy the primary purpose test. If you have an application satisfying that, then you're... Do you find that the district court interpreted that to mean applications and not features? Sure. The district court, multiple times on A5, talks about those as features. If you want to talk about them as applications, which you can, they are subject to the primary purpose test. Now, what will be covered is a full-featured guide that has, you know, all those features and more. That would be covered because that guide is still a program guide. It satisfies the primary purpose test. But is a piece of software that doesn't provide descriptive information, that just provides video on demand, outside of a program guide covered? Absolutely not. Would you say that all of these items on the list, pay-per-view, picture and guide functionality, user profile, would you say that the primary purpose of all of this is to provide some sort of descriptive information? But it does something else. It could do something else. It could be a secondary, tertiary purpose, but the primary is to provide some sort of descriptive information. The stuff in that list is not providing descriptive information. Those are features that a guide can provide and still satisfy the primary purpose test because it's a guide. That is not just what I'm saying. That is what both sides' negotiators said. So, even if this court finds there's an ambiguity, it's already been decided. There is no interpretation other than the district courts because the testimony below said that this is describing features of a guide. So, the second sentence is not describing things that are covered outside of a guide. It's covering things that are within a guide. Yeah. I mean, when I think about this case, it makes me think of an analogy. Like, if I pick up my smartphone and then I have a screen that allows me to dial a phone number, and then I can see the phone number that I dialed, this license would cover that interactive screen guide. But as soon as I press send, then this license wouldn't cover the actual connection of a phone call. That's the idea. So, all I have is a toy phone. No, Your Honor. What you have is a license to a company that creates program guides. It didn't create set-top boxes or functionality that that box may provide. They provide the program guide, and this license covers their piece of software, their program guide. Now, they also have non-exclusive licenses to video-on-demand and personal video recording because they were considering branching out and developing their own set-top boxes with such functionality, and they have that license. So, the district court didn't address 1B, but what is your answer to 1B? Just assume for the moment I think 1B provides, at first blush, a reasonable argument for Roby's position. Why is that wrong? It's wrong because it expressly distinguishes between controlling the outside equipment and giving a license to that equipment that is doing the recording and so on. And also, the third sentence negates that interpretation as well. The third sentence withdraws. Well, it allows for the ability to access outside applications, but it withdraws completely any coverage of those outside applications. Okay, counsel, you're well over your time. Oh, yes, Your Honor. We'll stop there. Thank you very much. Thank you. Mr. Dallander, you have five minutes. Thank you. I'll try to be brief. I just wanted to address one thing about the summary judgment was not based on consideration of the extrinsic evidence, and it couldn't have been based on that. The court did have one paragraph where it cited a couple of snippets of testimony, but under Delaware law, it's improper to construe the contract by reference to the extrinsic evidence when the court first determined it was unambiguous, which is what it held. And there is a lot of extrinsic evidence that the court did not account for in that. And I would just say, I mean, one classic. For these features to be included in the IPG field, they do not have to provide descriptive information related to television and radio programming. Isn't that right? This is PMC's general counsel. Sure, most of them can't. So that's just indirect conflict with the court's ruling. I would also note that this idea about what is included or what isn't included, and maybe it includes actual, you know, an IPG, or the court didn't read these features out of the license. I think all of that is, you can tell that's wrong because of what the court held on summary judgment. And what it said was, there is no accusation of any IPG functionality in this case. But there's no dispute that there was accused tuning, recording video on demand, and pay-per-view. And there was a program guide involved, but the court didn't ask, But I guess what PMC is arguing is that there's the remote control interactive program guide, and then there's the set-top box. And then everything you're trying to cover goes beyond just the remote control interacting with the screen and the interactive program guide. You're also trying to get into all the technology that's in the set-top box. I think the answer is that we are trying to get into the technology involved with a full-fledged, robust program guide end-to-end. And the evidence is undisputed that that's what the parties intended. And there's no dispute that that's how TV Guide Interactive worked, as PMC says in its brief, that when the TV Guide Interactive was loaded, it didn't record, it directed the set-top box to record. So it really makes no sense to think that the parties intended somehow that you could control recording, but you couldn't use recording. Are there no further questions? No, thank you very much.